The charges in the hill in this case' are, that William Esum, the father of complainant, Sarah Porter, departed this life about the year 1821, leaving his will of force, and *82 Ms brother Robert Exum, sole executor; leaving his estate-to the said Sarah, and her brother, Drury Exum, who has since departed this life, before arriving at full age, and to whom the said complainant was sole distributee. That shortly after the death of said William Exum, Robert Exum qualified as executor to his will, possessed himself of the property, and made a sale of a portion thereof, amounting, as charged, to $691 88, and shortly afterwards, viz: — in 1822, before collecting any of the moneys to which complainants considered themselves entitled, died, intestate. That the defendant then obtained letters of administration on the estate of William Exum, de bonis non, with the will annexed, and possessed himself of not only all that Robert Exum left undisposed of, but also, of the choses in action left by the said Robert, belonging to the said estate; this was what the said defendant collected, and converted to his own use.
That about the year one Sweet, of said State and district aforesaid, died intestate, to whom the complainant was distributee; and by virtue of his administration, his rights as guardian, or as , the defendant, possessed himself of a portion of the estate of said Sweet, and sold the same, as appeared by partial returns in the office of Ordinary for Marion district. That the returns in the' office of the Ordinary, were uncertain and unsatisfactory; and the said L. Cain collected the moneys due the estate, hired out the negroes, and rented the lands, and though amply sufficient to maintain and educate the complainant,. Sarah Porter, handsomely,, that he had raised her up in ignorance, and had even subjected her to the drudgery of a day laborer. That since the intermarriage of the complainants, they had repeatedly applied to the defendant to come to a fair account and settlement, but that he had refused, and contended that he had fully satisfied them, and had: settled according to the returns made in the office of Ordinary of Marion district; which the complainants allege to be false and fraudulent. The bill prayed for an account against defendant, for his actings and doings, and also, for’ the'moneys which came into his hands by virtue of the sales made by R. Exum, executor, deceased, before defendants administration,.
*83 Exhibits of the inventory and appraisements of R. Exum, and of defendant, as. administrator, were filed.
The answer admitted the administration, as alleged, hut denied he had used the complainant as charged, that she was ignorant and uneducated, hut that the fault was not his, as he had used every exertion to have her raised and educated as her circumstances would allow. The defendant insisted upon a settlement, in full, with the complainant, H. H. Porter, before the Ordinary, after his intermarriage ; and also upon a receipt, obtained 7th January, 1836, for $1068 09, which was admitted on the face of it, to be in full against him as administrator, as a bar to the claim of complainants, and for an account as prayed for in the bill. That he had given up to complainant the lands and ne-groes which belonged to his wife before the execution of the receipt, at which time there was a full and fair .settlement.
A copy of the receipt is filed with the report, and annexed.
From the report of the commissioner, it appears, that according to the family register, the complainant was of full age when he settled with the defendant and executed the receipt, and that is contradicted only by evidence of his mother, an old lady, who did not recollect her own age, nor the time of her marriage, nor the time of the birth of any other of her children. It is worthy of remark too, ■that the entry of the birth of complainant had been so much obliterated, that I was unable to decipher it by candle light, though it seemed to be conceded by those who had seen it in day light, that it was legible ; whilst the entries of the birth of all the other children were legible enough ; a circumstance leading to the suspicion that that had been intentionally obliterated, and the most charitable conclusion that I could form, was that the witness was mistaken.
At the request of the parties, Mr. Wheeler, the ordinary, stated the accounts between them, and the defendant paid, to the complainant the balance found due, according to that statement, who gave him the receipt in full, referred to in the answer. The error complained of in that statement, is, that interest is not computed on the annual bal anees of funds in the hands of the defendant. This is, of. *84 course, apparent on the face of the statement, and will be supposed to have been known to the complainant; and if the complainant thought proper to accept less than what was in law due him, I dont know that he has any right to complain; moral considerations might have been the mo.-tive; as usual care and success in the administration of the fund, and his inability to make a safe investment, would have been a legal consideration. However this may have been, there was clearly no fraud, concealment, or mistake, and this court will not entertain a bill to relieve a man from the consequences of his own folly.
If there had been fraud or mistake in stating the accounts, it is- very clear, that the complainant would not have been bound by his receipt, although it is expressed to be in full; but, prima facie, it is a bar to a general account, and if the complainant would avoid it, it was incumbent on him to charge and set out in his bill the fraud or mistake, that the defendant might come prepared to answer it.
I declined giving complainant leave to amend, even on payment of costs, for I regarded this bill as without any foundation ; and for the further reason, that to make the amendment necessary to the case stated, it must be an entirely new bill, and a new subposna must issue, so that there would be neither more delay nor more expense, by that mode of proceeding, than by amending the bill.
The complainants moved the Court of Appeals to reverse the Chancellor’s decree, on the following grounds:
1. Because the receipt set up in the defence, and sustained by the court, is not a bar to the claim of complainants for an account from, the defendants, under the circumstances of this case, when manifest errors in the settlement were shewn to exist.
2. Because the record proven oh the trial, is only a transcript of the original record of the age of H. H. Porter, the complainant, and should not be allowed to contradict the positive testimony of his mother.
3. Because the complainants had, at least, a right on payment of costs, to amend their bill setting forth a specified fraud or mistake i n the settlement, on which the receipt was given.
*85 Evidence taken before the commissioner, on a reference, 15th
Mrs. Charity Porter says, plaintiff was born 5th February, 1815. The family record presented is that which witness says contains his age, it roads thus: “Hugh Humphrey Porter, was bom January 7th, 1815.” Defendant’s counsel havingoasked her if there was a record of his age, witness replied there was, but it was so faded, that it could not he made out; plaintiff said he had the record, produced it, and witness said that was the record taken from a small Bible by her husband, plaintiff’s father. Thatin transcribing from the lesser to the greater Bible, there was a mistake in the copying; that her husband said he wished all the names recorded in the large Bible before he died; and that he held the smallBible, and requested a Mr. M’Nabtocopy them, which he did.
Witness was asked when she was born; says she does not know. Says her son, Wm. Hanley, was bom in January; does not recollect what year or day; but if he had been Hying, he would be 40 in January last, or the next January.
John, was born 2d January; does not recollect the year;
James, was bom in August; does not recollect the year..
Harriet, was bom in February; dont know day nor year.
Olivia, was born in August; don’t know day nor year; if living now, would be up:, wards of 40.
Does not know the date of her marriage, it. was in the month of August; don’t know year, don’t know the age of Stephen.
Emma, if she had lived till 15th March next would have been 22 years old; her hus. band died 26th September, don’t know the year.;
Her brother, James Crawford, died November or December ;■ don’t know the year or day.
Recollects plaintiff’s age, because he was her youngest son; — that Harriet was born on 5th February — two and six years older than plaintiff.”
If she, witness, lives till 8th June next, she will be 65 years old.
Defendant’s solicitor asked witness what particular circumstance attended the birth, of plaintiff, which would make herremember his age — refused to answer, left the room* but returned, and then said, it was her illness — she said there was nothing but her illness, which caused her to remember plaintiffs age; and being interrogated further by complainant’s solicitor, says she always would remember his age — -and Emma, who died a few days since, they being her youngest children. Witness says she is now sick,, and has been for „ several days past; has a fever now. Gave the age of Emma, as in the record. That if she had known that she would be called on for the ages of the rest of her children, she would have taken the paper exhibited, and been able to answer; but didnot do this, not expecting to be called upon : that she had not had, the paper in hand for twelve months, knowing the age of plaintiff, without the records.
Does not know which of the entries of the children’s ago is wrong, but if ’twas read', she could answer correctly. Says Stephen was not born in June, but in the month of May, not knowing year, nor day of month-.
The commissioner, in taken down the testimony in this case, is constrained' to notice the manifest reluctance of the witness to answer to most of the questions propounded by defendant’s counsel; said they were unreasonable, and unfair; was much excited. The-commissioner did not observe the same reluctance, to the few questions propounded by th® *86 complainant’s solicitor. Witness complained of being sick, &c. And another of her reasons for being relucutant, was that it was so long ago that she was called to remember, that she could not do it, unless she had time to consider — as explained by herself.
Harlee for the motion;
Bargan contra,
Commissioner made a settlement between the plaintiff and defendant, from the returns in the Ordinary’s office, and a number of vouchers furnished by defendant. A receipt was passed between them, at'their joint instance, in my presence, for the amount made in the account of defendant; plaintiff represented himself of age. Defendant resided some distance from the plaintiff; some fifteen or twenty miles, I should suppose —,on the west, or opposite side of the Great Pee Dee river.
Plaintiff admits that he had no acquaintance with defendant, previous to his marriage with his wife — and that he represented himself of age at the settlement, and thought he was.
Defendant’s counsel admits that the account made by commissioner for defendant, was the same by which they settled.
The commissioner further says, that ho calculated no interest, nor struck any annual balance — the plaintiff and defendant both knew it, and both sanctioned and seemed satisfied and contented, believing that as there was but small balances on either side annually, they would settle without a law suit. I am under the impression that plaintiff called on me first, making enquiries, and to ascertain the affairs of his wife’s interest soon after his mariage. Mr. Cain, the defendant, called and said, that he had heard that his ward was married, and that plaintiff wanted his estate as soon as possible; and requested me to make out his account, in order that he might settle off. This was the request of both parties, that there might be a speedy settlement — that neither was desirous of a law suit. Plaintiff did not, as well as I recollect, examine any of the vouchers, or the account returned by defendant. Both of them, however, examined, or had read to them, the account made by myself. I have examined, and find returns at this time by defendant only up to 1827 — and the retains of the latter year filed in 1830.
COPY OF RECEIPT.
Received, 7th January, 1836, of Larry Cain, administrator of the estate of William Exum, one thousand and sixty-eight dollars and nine cents, in full, for my wife’s portion of the personal property of said estate, and relinquishing all, and every interest, we now have, to the said Larry Cain, of said estate.
Signed, HUGH PORTER.
Witness, Edward B. Wheeler.